The Honorable, the United States Court of Appeals for the First Circuit is now in session. All persons having any business before this Honorable Court may give their attendance and they shall be heard. God save the United States of America and this Honorable Court. Today's cases will be called as previously announced and the times will be as allotted to counsel. The first case today is Ghassan Alasaad et al. v. Chad F. Wolf et al. Appeal No. 20-1077 and Appeal No. 20-1081. Attorney Waldman, please introduce yourself for the record and begin. Thank you. Good morning, Your Honors. My name is Joshua Waldman. I'm here from the United States Department of Justice representing the appellant and cross-appellee in this first case. The district court correctly rejected any requirement for probable cause and a warrant for a border search of an electronic device. No court has ever required that level of suspicion for any border search, whether of an electronic device or anything else. But the district court erred in holding that a quick look at a few texts or photos requires the same reasonable suspicion as a comprehensive cataloging and analysis of gigabytes of information stored on a device, including deleted or encrypted data. Three circuits squarely addressing this question have correctly rejected that view, holding that heightened suspicion is required, at most, only for a forensic search, but not for manual searches. The district court likewise erred in holding that a border search permits a search for contraband, but not for evidence of contraband smuggling, and thus an electronic device can only be searched for digital contraband. The border search exception is grounded in the longstanding right of the sovereign to prevent the entry of contraband. Searching for evidence of contraband smuggling serves that purpose just as much as searching for contraband itself, since both may lead to interdicting the contraband before it enters the country. The plaintiffs never offer any persuasive reason to the contrary, and instead base their argument entirely on a case that the Supreme Court overruled nearly 50 years ago. The district court, in this case, improperly entered a blanket rule where any basic search, no matter how minimal or unintrusive, for example, a brief look at a single text or email, required reasonable suspicion. The three circuits that have addressed this question make clear that that is incorrect. Counsel, let me ask you this question. The plaintiffs in this case were seeking a declaratory judgment that the directive or its department or its sub-agencies were unconstitutional because of various perceived shortcomings. If we were prepared to hold that the directives themselves are lawful, is it necessary for constitutional issues, or can we simply dismiss the declaratory judgment action or affirm the dismissal of it or order the district court to dismiss it? I think that you can do as you suggest, Your Honor, and not necessarily reach all of the underlying constitutional questions. Before I go on, I was remiss in my introduction in not asking the court for five minutes of rebuttal time. If it's not too late to do so, Your Honors, I'd like to reserve that time. Yeah, you may have it. Thank you, Your Honor. I appreciate your leniency in that. Judge Selye, I think you're right that if you were to find that the directives themselves in their overall distinction between basic and advanced search generally comply with the constitutional standards and could resolve the question in this case, I don't think that you need to go on necessarily and lay out all the precise constitutional requirements so long as the directives would satisfy any constitutional standards that may apply. Okay. And one further question. In your opening remarks, you distinguished between basic searches and forensic searches. I take it your reference to forensic searches is not meant to differentiate forensic searches from what the parties have been referring to as advanced searches? That's exactly correct. I think that as the Fourth Circuit noted in Colsus, the import is the same between that terminology and the ones used in the directives. While they're not entirely coextensive for purposes of resolving this case, I think there's such a practical alignment that the difference in nomenclature is immaterial for resolving the issues before this court. Thank you. You're welcome. Counsel, I now have some questions. Were any of the plaintiffs, in fact, had their equipment searched pursuant to these directives after the effective date? You, in your briefing, seemed to suggest that two of them were, but when I read the complaints, I did not see that. Can you clarify? Yes, Your Honor. There were two. One of them submitted a supplemental declaration, which is why you won't find it in the complaint, but you'll find it in appendix at page 352. The other post-2018 search, you'll find it in appendix page 149. I will note that both of those searches that were conducted after 2018 were alleged to be basic searches, not advanced searches. Okay. Next question. Even if the directives are thought to meet any reasonable suspicion requirement, the district court nonetheless limited the scope of the searches to less than the statutory authority given to the agencies for searches. You also, I believe, argue that the actual judgment issued did not adequately provide for sort of a terrorism exception to any suspicion requirement or adequately consider all of the exigent circumstances. So, I take it, following up on Judge Selya's question, you think those issues would need to be addressed? I think they would not need to be addressed, if I heard your question correctly, and the reason is that that exception was not invoked in this case at all. As you just noted, most of the searches except for two occurred before 2018, and the national security exception, which is I think what you're referring to, didn't exist prior to 2018, so could not have been invoked for the simple reason that the exception did not exist. After 2018, both searches were basic searches, and since the national security exception is to reasonable suspicion required for an advanced search, for that reason, the exception would not have been relevant because, in other words, they were basic searches, therefore no suspicion was required in the directive, and it follows from that that no exception for reasonable suspicion would have been required. For that reason, I think it completely doesn't have anything really to do with this case. All right. Now, how do you understand the plaintiffs to differentiate the Fourth Amendment issues from the First Amendment issues? Well, to be honest, Your Honor, I'm a little bit confused about what their First Amendment argument is. As we said in our brief, I think the Supreme Court in PJ video rejected any higher Fourth Amendment standard based on First Amendment concerns, and both the Fourth and the Ninth Circuit have applied that specifically to border searches of electronic devices. In their reply brief, the plaintiffs say they're not asking for a higher standard. In fact, they say they're not really asking for a rule that protects expressive activity writ large. So I'm not really sure what their argument is or where it comes from. It seems to be a rule that applies only to expressive content and only when it exists on a cell phone. I don't know where that comes from in the First Amendment or the Fourth Amendment, but no court, as far as I'm aware, has accepted it, and it would just create a huge hole in the Fourth Amendment at the border, which is why the Fourth and the Ninth Circuit both rejected any such argument. Okay. Unusually, all of the other circuits have dealt with these issues in the context of motions to suppress in criminal proceedings. This is a civil case, not a criminal case, that seems to have aspects of a facial attack and possibly as-applied attacks. Hypothesize for a moment that a journalist presents a claim under the First Amendment independent of the Fourth Amendment, that he is being targeted for the anti-government articles he has written, and that he or she would not have been subjected to either a basic search or an advanced search but for that targeting. On your position, is it open for someone in the future to make an as-applied attack along those lines? I suppose that it is, but I do want to emphasize that the district court made a specific factual finding in this case. Four minutes remaining. Thank you. There were no evidence of targeting based on speech and that the directives are content neutral on their face. I take it that you are making a hypothetical, but I do want to emphasize that this is not at all the facts of this case. I think the hypothetical that you pose would likely be a straight-up First Amendment challenge and not at all a Fourth Amendment challenge. If you have that in a proper case, you could look at it, but under the First Amendment as under the Fourth Amendment, if extreme hypotheticals are presented in a case, the there is no reason to answer hypothetical questions in this case that are not presented on the facts. In fact, there was a specific factual finding unappealed by the district court that said there was no targeting based on speech in this case. All right. You have to forgive us, judges, but we always worry about the limits on any opinion that we are asked to write. So I'm going to give you a... No, I'll withdraw that. I take it the government policy applies regardless of whether the person entering or exiting is an American citizen. That's correct, Your Honor, and 10 of the 11 plaintiffs in this case were citizens. The 11th was a lawful permanent resident, but the Supreme Court has made clear that the border search exception applies to citizens and non-citizens alike. But two of the amicus briefs deal with foreign nationals who are not lawful permanent residents, and we don't have those problems in this case. Is that correct? You do not because all the plaintiffs are citizens or lawful permanent residents. That's correct. But, Your Honor, I want to circle back to one of the questions that Judge Lynch or comments that you made, Judge Lynch, about worrying about hypothetical situations. I certainly don't think that you should be deciding this on hypotheticals, but when you look at the particular facts of this case, one of the things that's most notable about the plaintiffs is the dearth of facts alleged in their complaint and stated in their statement of undisputed material facts. Most of the plaintiffs don't tell you anything about what was searched, how much was searched. Some of them don't tell you how long it was searched. In fact, one of them just says, my phone was searched, and that's all the evidence. And yet the district court and the plaintiffs want a blanket rule that applies to each and regardless of the factual situation. In fact, that was a strategic litigation choice by the plaintiffs who, during discovery, disclaimed any need for discovery into the specific facts of the case precisely because they wanted a blanket rule that treated the most minimal basic search under the same constitutional standard as the most comprehensive advanced search possible. Do I understand you to be saying that, therefore, the way the plaintiffs have framed the case, we have a facial attack in front of us and no possible as-applied attacks? I don't think that it's impossible to construe it. I do think a facial challenge here, and certainly one was made, is easily disposed of because there's clearly some set of facts in which a phone can be searched without suspicion if it's looking at a single text, for example. But as for the as-applied challenge, that fails as well. That fails as well because the dearth of facts does not remotely establish anything close to what other courts would consider a border search of a device that requires reasonable suspicion. It doesn't come anywhere close to the so-called forensic searches. Okay, one other question. Although you take out after the plaintiffs for not providing a lot of facts, in fact, the litigation started before the directives were issued. And, indeed, the bringing of the suit may have had something to do with the directives. I looked at what you provided as legislative history within the agencies as to the origin of the directives. There's not an explicit reference to the Fourth Amendment. Did I miss something? An explicit reference to the Fourth Amendment in the directives? As a basis for the change in position that the directives now offer. Well, I do think that the agency took the view that they did not necessarily think advanced searches required reasonable suspicion under the Constitution. But they did take note of the cases. And, in fact, if you look at the guidance that ICE issued, which is in the addendum, not the appendix, there is a specific reference to the Fourth Circuit case in CULSES. So the agencies certainly were aware of what the circuit courts were doing with respect to the constitutional requirements of cell phone searches, of device searches. Okay, so I take it your position is we are not conceding that even for advanced searches, the Constitution requires reasonable suspicion. But because the directives require reasonable suspicion for advanced searches, the constitutional issue is not before the court. I couldn't have said it better myself, Judge Lynch. That's exactly correct. And that's, for example, what the Supreme Court did in Ramsey, the search of mail, where they said the regulation does not allow the Postal Service to read the mail without a warrant. And since the regulation doesn't allow the government to do that, we don't need to reach the constitutional question of whether the Fourth Amendment would additionally prohibit what the government's regulation also prohibits. Okay, thank you. Thank you, Your Honor. Attorney Waldman, at this time, you can mute your device. Attorney Bhandari, please introduce yourself to the record. May it please the court, Asha Bhandari for the plaintiffs. I would like to address two main points today. First, this court should hold that the Constitution requires a warrant for electronic device searches at the border. But at a minimum, it should uphold the district court's ruling that the Constitution requires at least reasonable suspicion of digital contraband. And second, this court should hold, as the district court correctly held, that the rule should be the same for basic searches as for advanced searches, because basic searches are extraordinarily invasive and do not advance the government's legitimate interests in warrantless border searches. Excuse me, counsel. With respect to your first point, we would be the first court, were we to follow your counsel, to hold that a warrant requirement applied at the border. Isn't that so? Yes, Your Honor. This would be the first court to hold as a categorical matter that a warrant is required for all devices. That's what you're asking us, to make that holding as a categorical matter. Yes, Your Honor. Just as this court so held in worry when it became the first appellate court to hold that search incident to arrest of cell phones requires a warrant and was unanimously upheld in Riley. But I want to turn to the government's arguments about reasonable suspicion.  First, the directives do not comply currently with the rulings of all other circuit courts. The Fourth Circuit in Cole Suess, first of all, explicitly reserved the question of what standard applies to basic searches. It did not say that basic searches can be done in a suspicionless manner. And then in Egbekan, the Fourth Circuit decision that was decided one week after the district court opinion in this case, the Fourth Circuit said, actually, you cannot conduct warrantless border device searches to advanced pre-existing domestic investigations. In that case, border agents search someone's cell phone looking for evidence of a purely domestic trafficking investigation. And the Fourth Circuit said you need a warrant for that search, even though, in fact, officers had probable cause at the moment that they searched. The government's directives do not comply with that requirement. And similarly, with the Ninth Circuit. Counsel, we've got two different types of searches here. We'll use the government's nomenclature, the basic search and the advanced search. There is nothing in your brief that contests the government's assertion that for advanced searches, the directives, in fact, comply with reasonable suspicion. You do say that you're still concerned about it because the directives do not provide a private cause of action. But as to the question of whether the advanced search directive complies with reasonable suspicion, you did not contest the government's assertion. Are you now contesting it? With respect, Judge Lynch, we did make the argument that the directives do not, in fact, require reasonable suspicion because of the national security exception, which permits them to conduct suspicionless searches under that vaguely defined exception. And why is that issue in this case? Well, Your Honor, the plaintiffs have raised a justiciable controversy that they have faced device searches in the past and that they are at risk of future suspicionless device searches, as the district court found based on the facts here. Have any of the plaintiffs been exposed to what you're referring to as national security searches? Your Honor, we don't know. I don't recall anything in your complaint or even in the discovery that would say that. Well, Your Honor, the complaint was filed before the directors. And I think the point, because we are arguing that as a categorical matter, not as an as applied matter, that all of the plaintiffs remain at risk of these future searches without suspicion. They do remain at risk that the government could invoke that particular exception, which is vaguely defined and does not require suspicion of wrongdoing to search the plaintiffs. They remain at risk of a thousand different things, none of which are raised in this case. We need an actual case or controversy, not an imagined one. Yes, Your Honor. And the district court correctly held that the plaintiffs have standing to challenge the policies and practices writ large because they are at risk of unlawful searches under them. It's the government's use of a reasonable suspicion standard for advanced searches and their use of no standard at all for basic searches. I understand you can challenge those two points, but it seems to me you're bringing the national security exception in from left field. That there's nothing in this case that puts any such exception validly an issue. Your Honor, even if we leave aside the national security exception, the plaintiffs have challenged the lawfulness of the reasonable suspicion standard with respect to advanced searches. No, no, no, no, no, no, please. You keep sort of circling around. Let's put aside your answer that, well, yes, we did in fact challenge reasonable suspicion for advanced searches as to the exception for national security. Now let's assume that national security issue is not in front of us. So I go back to my question. If that's not in front of us, are you contending that the advanced search directive does not itself require reasonable suspicion? And if so, what is the basis for that? I apologize, Judge Lynch, and I think I understand your question correctly. The plaintiffs argue that even if the directives require reasonable suspicion, that does not comply with the constitutional requirement because it must be reasonable suspicion of digital contraband as the Ninth Circuit held in Kanyo. That that is the, you know, if a warrant is not required, that the digital contraband limitation... Please, once again, there is a distinction between the scope of the search and whether you are contesting that the policy itself requires reasonable suspicion. Thus far, I am not hearing any argument that the policy itself does not require reasonable suspicion. You are now on to a separate argument as to what they are permitted to search for using a reasonable suspicion argument standard. And you are saying it's limited to actual evidence of contraband. Do I have that correct? Yes, to the extent that we are arguing that it is limited to evidence, not to evidence of contraband, but to a search for digital contraband itself. Okay, so why should this court adopt such a standard? Judge Lynch, we think it is important that the court narrow the scope of permissible search for the reasons that Judge Bybee's opinion in Kanyo laid out. So that searches are closely tethered to the historical interest that permitted warrantless searches at the border. Judge Bybee's opinion noted that the primary interest that justifies warrantless searches is the search for physical contraband. And that the search for evidence is not closely tied to that. And there are two concerns in particular if the search can be for more than digital contraband. First, it allows for general rummaging through private and personal information and people's devices of the sort of general search that is one of the main concerns behind Fourth Amendment protections. But second, the record in this case shows that the government admits that it can conduct searches of travelers when the person of interest is someone other than the traveler. So a reasonable suspicion requirement of any violation of a law enforced or administered by CBP and ICE means that the agencies can and do search, for example, a journalist's phone because they are interested in the activities of a source. Or a business person's phone because of the activities of their associate. A family member's phone because they have reasonable suspicion about the family member, not the person themselves. Okay, can I go back to an argument your brother made? He said as to your plaintiffs who were actually subjected to the policies, it was merely a basic search. It was not an advanced search. Correct? He's referring to the two searches that took place after the lawsuit was filed. That's what I just said, yes. Some plaintiffs have been subject to advanced search. And the plaintiffs do contest that those basic searches are also unlawful when they are done without reasonable suspicion. So no advanced searches were done of any of your plaintiffs which involved looking for evidence directed to possible criminal activity by third parties. Correct? No, Your Honor. That is correct. But that is the record evidence that the government's policies permit this. Okay, so I'd like to move on simply because we don't have a lot of time. Okay, so I have been struggling with the distinction between the Fourth Amendment analysis and the First Amendment analysis. And absent any targeting or any form of retaliation against someone for speech that they have engaged in or the press, is there any distinction between the two analyses actually presented in this case? Yes, Your Honor. The First Amendment requires an independent analysis. And the best analogy I can give you to the nature of our claim is the concern that the Supreme Court articulated in Ramsey in 1977, decades ago, when it noted that if, in fact, customs officials were permitted to read all incoming international mail without suspicion, that would raise the specter of chilling First Amendment freedoms such that a warrant requirement could protect against that. So the Supreme Court was so concerned about a regime of reading correspondence that was coming over the international border as to float the possibility of this First Amendment problem requiring a warrant. That was not about targeting individuals. The concern wasn't that journalist correspondent would be opened, you know, a lawyer's correspondence would be opened. That was just the chill on Americans' freedoms generally knowing that... Okay, so now let's work backward from that premise to if the government had reasonable suspicion, would there, in fact, be a First Amendment problem? Your Honor, I think that a reasonable suspicion of digital contraband requirement would go a long way to protecting against the chill on First Amendment freedoms because individuals would then be confident when they cross the border that their correspondence, that their e-mails, that their texts and photos won't just be searched at the whim of an officer or without any suspicion of wrongdoing on their part specifically, and that the searches will be limited. Because when an officer is searching through a phone, of course, you know, even if an officer is looking for specific things, what they are likely to see are hundreds of e-mails, calendar invitations, notifications about medical appointments. You know, looking through photos, you see a lot of personal intimate family photos, even if you're searching for specific things. So limiting the scope of the search would really go a long way to protecting against those First Amendment harms. Again, the journalist would then not have to worry as much that an officer could just look at their e-mails for source information because that would not be about a search for digital contraband. A lawyer, a defense lawyer, as was raised by the National Association of Criminal Defense Lawyers and others, they wouldn't have to worry that their files on their laptop would be searched for wrongdoing by their clients because they know only a permissible search is for digital contraband that they themselves are carrying. So we do think that that limitation would address the First Amendment concerns. I do want to raise one other issue. I'm sorry. Under the Fourth Amendment, there are exigent circumstance exceptions. Are you suggesting under the First Amendment there would be no such exceptions? Because regardless, there is a chilling effect? No, Your Honor. The exigent circumstances exception to any general rule applied would still be available. And I don't think that that would have a chilling effect because, again, exigent circumstances requires certain factors. And one of the key factors, of course, is suspicion of wrongdoing by the person. Five minutes remaining. The key, of course, to a chilling effect is when people who have not done anything wrong and therefore cannot control the fact that an officer might search their information. That's that's the key. So as soon as you enter in the realm of exigent circumstances where, you know, officers generally are dealing with a situation of wrongdoing or potential harm, the mind run of innocent travelers who cross the border need not be concerned about that. And that need not raise a general First Amendment concern. But doesn't the reasonable suspicion standard in and of itself address that concern? Judge Selye, do I understand you to mean reasonable suspicion, but absent a digital contraband limitation? Yes. If there is reasonable suspicion to believe that an individual is carrying evidence of criminal activity, not digital contraband, but evidence of criminal activity, it seems to me that that is in itself a protection against the kind of general rummaging that you seem to fear. Because that suspicion has to be targeted, has to be aimed at the individual traveler. There's got to be some reason to believe that he or she has in his or her possession that evidence. Your Honor, I think that a reasonable suspicion requirement alone would certainly go some way to protecting against the First Amendment chill problem. You noted that it would have to be reasonable suspicion of the traveler themselves. I said that the traveler himself or herself possessed the evidence. It wouldn't necessarily have to be his or her wrongdoing, but that he or she possessed the evidence. That would be the key to reasonable suspicion. I understand. I think that that would still raise First Amendment concerns. Why? First, why? Second, why is that issue in this case? I'll just raise the example of journalists and attorney-client... We don't have a journalist subjected to an advanced search. Your Honor, I want to emphasize that we also challenge basic searches. I know that, but we're talking now about the reasonable suspicion requirement that the directive places on advanced searches. So let's not complicate matters beyond that. To my recollection, the record doesn't even fairly raise the question of any journalist or any defense attorney or any of the other hypotheticals that you can spin out at length who has been subjected to any advanced search under a reasonable suspicion requirement. You're asking us to really give you an advisory opinion as to how this might work in such an instance. Your Honor, it is correct that we're not alleging specific attorneys having been searched. You asked a question about whether the directives require this. I'm sorry to interrupt, Judges. I wanted to make sure that Judge LaPlante is still on the line. Judge LaPlante? I am on the line. I can hear everything. Great. Thank you so much, Judge. Thank you. I'm not sure if that's good or bad for you, Joe. So far, so good, Judge. Okay. The district court judge correctly noted that the plaintiffs raised a facial challenge to the policies, but I understand if you are interested in whether these specific plaintiffs' experiences raise the specific advanced search concern. No, we do not allege that. We say that facially these policies do not comply with the First Amendment. Okay. Thank you. That's helpful. I have another, pardon me, perhaps hypothetical question. But Judge Selye said if there was reasonable suspicion that the information on the electronic device had to do with the commission of a crime. Now, the district court limited this to contraband, yet Congress has authorized the border agents to search and intervene in a number of crimes. What used to be called white slavery is now called transport of people for illicit purposes across lines. There are all sorts of other worries that Congress had, and so they authorized these searches. But you seem to think that Congress's power to authorize these searches is limited by a historic understanding of old Supreme Court cases that were concerned with contraband, and that is somehow a limitation. And I don't understand that. Could you tell me why you think that that's the correct way of understanding this? Yes, Judge Lynch, I will try to do so. First of all, we don't dispute that Congress has given CBP and ICE the authority to enforce a host of laws. Congress has not specifically given it the authority to search devices at the border, so I want to be clear about that. But it has given it the authority to enforce laws. But the key question is whether the warrantless search authority can extend to that whole host of authority. That's the constitutional limitation. Where in the Constitution is there any such limitation? The only thing I've derived from your argument is a limitation that you think is inherent in the historic function of border searches at a time before Congress had authorized all of these other activities. Is that the sole basis for it? There's also the multiple Supreme Court opinions since then, from Montoya de Hernandez to Flores Montano, that have reiterated that the warrantless search authority at the border is limited to certain limited purposes. And in fact, in Flores Montano, the Supreme Court left open the possibility that some border searches might be per se unreasonable under the Fourth Amendment. And in Riley, the Supreme Court analogized the search incident to arrest exception to the border search exception as a category of warrantless search authority that the government has, but which must be narrowly tethered to its justifications. So the Supreme Court reiterated its understanding that warrantless search authority are exceptions to the Fourth Amendment.  Judge LaPlante, do you have any questions now that you've been able to join us visually as well as through auditory means? No, Judge, not any questions that you haven't already covered. Thank you. Okay. Thank you, counsel. Thank you. If Attorney Waldman would please unmute at this time, there's five minutes of rebuttal. Please reintroduce yourself for the record. Good morning again, Your Honors. And it's good to be able to see all of you now. Joshua Waldman for the United States. I'd like to just begin with the question that the holding of the Ninth Circuit in Canoe or Cano, however it's pronounced, about digital contraband. The argument was made in Canoe and is made here, but I haven't heard the Ninth Circuit or the plaintiffs really give any kind of persuasive answer about why searching for evidence of contraband smuggling doesn't serve the government's purpose of interdicting contraband before it enters the country. To me, that just doesn't make any sense, and I haven't heard a sufficient answer to that. I also want to point out the sweeping nature, the potential sweeping nature of what that rule would mean if you couldn't search for evidence. Because when you look beyond the devices in this case to what the CBP does on a normal day, and with COVID we're not in normal times, but in normal times, billions of dollars of cargo shipments are coming in every day. And the CBP demands bills of lading, invoices, all kinds of paperwork regarding the cargo before it can enter the United States, all of that is evidence, not contraband. And if you can't look at evidence, then you couldn't look at any of those things. So they're proposing a rule which would have potentially sweeping consequences for the border search exception. In addition, the plaintiffs talk about a question about general rummaging for general law enforcement purposes. The CBP's directive specifically says they must have reasonable suspicion of a provision that CBP enforces, which means that it's going to have a nexus to the border, which is exactly what the Fourth Circuit said in Colsus is proper and fine. So you don't need to consider anything about purely domestic offenses. It's not an issue in this case. Although I would note that some circuits, including the DC Circuit in GER, which is cited in our brief, and the Second Circuit in a 2015 case called Levy, said that you don't even need that restriction for the CBP. That was outside of the context of a digital device, but it was within the context of a border search. We're not asking for that rule in this case because the directives wouldn't permit us to do it anyway. But I do think that there's no basis at all in Canoe. It's just reviving a distinction from Boyd that the Supreme Court overruled in Hayden because it had no basis in the constitutional text. It was an unworkable rule and it had no relationship to privacy concerns that underlay the Fourth Amendment. I'd also like to address briefly the First Amendment question and just correct the record a little bit. My opposing counsel refers to Ramsey, the mail case. In fact, the Supreme Court didn't reach the underlying First Amendment question about reading the mail. But everything the court said suggested that would not be a constitutional problem. The court explicitly rejected the argument that mail is different when it comes to the border search exception. They said there's no reason to think an internationally mailed letter is different from a letter that you carry in your hand over the border. And that the privacy concern should be any different such that they would override the government's interest at the border, which as the Supreme Court has said, is where the government interest is at its zenith. So I don't think that the First Amendment argument carries any weight here, certainly not from Ramsey. And in fact, the plaintiffs in their reply brief at page 21 say they're not even asking for a rule for all expressive activity, just expressive activity that's on a phone. And I don't understand where that distinction would possibly come from in the First Amendment. And just to return for one last point about Canoe, there was a question I believe Judge Lynch posed about whether the plaintiffs have made any allegations that what was looking at in this case was mere evidence as opposed to searching for contraband. And the answer to that question, I think, is you wouldn't know precisely because of the dearth of factual allegations in the complaint. In fact, even when they say something like you looked at an email, there's no indication of whether you were looking at an email because you thought there was digital contraband in that email, as was the case in Cotterman and other things where that would be perfectly permissible, or whether they were looking for evidence. And Mr. Waldman, in fairness, how are the plaintiffs going to know what the border officer has in his mind when he does the search? Well, I think that's actually part of the problem with the Canoe rule, which is what the Ninth Circuit said in Canoe is, at least when it comes to a basic search for which you need no reasonable suspicion at all, you can look anywhere where digital contraband, quote, maybe. And one of the problems with that rule is it's very difficult to know how a judge or a border officer is supposed to determine where digital contraband, quote, maybe, because it often can be hidden, purposefully hidden within a digital device. Finish your answer. So, Your Honor, I think that you should reverse the judgment of the district court in terms of both its blanket rule between a basic and advanced search and its reliance on the rationale in Canoe. If there's any further questions, I'm happy to answer them. Yeah. You seem to be saying not only reverse, but vacate the relief that has been given the declaratory judgment. Correct? That's correct. All right. Thank you. Thank you, Your Honor. That concludes argument in this case. Attorney Waldman and Attorney Bondari, you should disconnect from the hearing at this time.